Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

VALDECI PACHECO DE OLIVEIRA,

               Petitioner,

         v.

LUIS SOTO, *et al.*,

               Respondents.

Civil Action No.: 25-16604 (ES)

OPINION

SALAS, DISTRICT JUDGE

**THIS MATTER** is before the Court on the submission of a counseled motion for a temporary restraining order ("TRO") (D.E. No. 2 ("Motion for TRO" or "Mot. for TRO")) and an amended petition for a writ of habeas corpus under 28 U.S.C. § 2241 (*id.* ("Amended Petition" or "Am. Pet.")) by petitioner Valdeci Pacheco de Oliveira ("Petitioner"). Petitioner is a citizen of Brazil currently confined as an immigration detainee at the Delaney Hall Detention Facility in Newark, New Jersey ("Delaney"). (Am. Pet. ¶¶ 1, 7). Petitioner names as respondents Luis Soto, Director/Warden of Delaney; John Tsoukaris, Director of the New Jersey Field Office for U.S. Immigration and Customs Enforcement ("ICE"); Pamela Bondi, the Attorney General of the United States; Krisi Noem, Secretary of the Department of Homeland Security ("DHS"); and Todd Lyons, Acting Director of ICE (collectively, "Respondents"). (Am. Pet. ¶¶ 8–12). In accordance with Rule 4 of the Rules Governing Section 2254 Cases ("Rule 4"), applicable to § 2241 cases through Rule 1(b), the Court has carefully considered the Amended Petition to determine whether it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." For the reasons set forth below, the Motion for TRO is **DENIED *without prejudice*,** and

Respondents shall file a full and complete answer to the Amended Petition.

## I.    BACKGROUND

According to his Motion for TRO, Petitioner has been detained by ICE since August 30, 2025, and his "corresponding habeas petition challenges his unlawful detention with his Bona Fide U-Visa Determination and pending final approval for a U-Visa, his inevitable prolonged detention based on USCIS's backlogged processing times for final U-Visa decisions . . . , and the unconstitutional punitive conditions endured by Mr. Olveira while in ICE custody."  (Mot. for TRO at 1–2 (noting that USCIS (United States Citizenship and Immigration Services) statistics indicate that final U-Visa decisions could take as long as ten years)).

In the factual statement section of the Amended Petition, Petitioner alleges that he was born in 1979 in Brazil and traveled to the United States in April 2002 to provide a financially stable future for his then-pregnant wife (the daughter was subsequently born in Brazil later that same year).  (Am. Pet. ¶ 22).  In December 2005, the wife and daughter joined him in the United States. (*Id.* ¶ 23).  Later that same month, Petitioner was the victim of an armed robbery while working as a pizza delivery man, in which he was held at gunpoint, robbed, and severely beaten.  (*Id.*).  He worked with the police, and they arrested the two assailants.  (*Id.*).  However, Petitioner never regained a sense of safety in the United States, and, in an attempt to find psychological help, Petitioner and his family returned to Brazil in 2009.  (*Id.* (noting that another child (a son) was born in 2015)).

According to the Amended Petition, while in Brazil, Petitioner's emotional stability never improved, his financial situation was dire, and he missed his life in the United States.  (*Id.* ¶ 24). He returned to the United States in July 2022, started his own home painting and improvement business (his family's main source of income), and his mental health began to improve after he

2

began taking prescribed anxiety and depression medications. (*Id.* ¶ 25). Petitioner also claims that he has no criminal record. (*Id.* ¶ 26).

On January 20, 2023, Petitioner filed an I-918 U Nonimmigrant Status Petition as well as an I-765 Application for Employment Authorization. (*Id.* ¶ 27). On May 14, 2024, he received a Bona Fide Determination Notice granting him employment authorization and "deferred action." (*Id.*).

Petitioner alleges that, on August 30, 2025, ICE took him into custody at an ICE check-in. (*Id.* ¶ 28). On Petitioner's first day at Delaney, he was housed in a small, ice-cold processing room with several other detainees for twelve hours without any food. (*Id.* ¶ 29). After processing, he was assigned to his current sleeping room. (*Id.* ¶ 30). Petitioner shares this fifteen-foot windowless room with approximately fifteen other detainees, the bed is as "hard as a rock," and his blanket falls apart upon use. (*Id.* ¶¶ 30–31). The bed causes severe back pain, and he visited the medical facility for help with the pain. (*Id.* ¶ 31). He receives only one hour of outside activities each day and has to use filthy bathrooms and showers, which have black mold. (*Id.* ¶¶ 32–33). The guards enter the room and flash lights in Petitioner's eyes throughout the night, and, when he attempts to talk to the guards about how he is feeling, they threaten him with solitary confinement. (*Id.* ¶¶ 34–35). In addition, Delaney serves food that is moldy, expired, sometimes frozen, and "often just [smells] rotten." (*Id.* ¶ 36).

According to Petitioner, his mental health has been at an "all-time low," with the medications causing him to sleep all day (and he suffers panic attacks when awake). (*Id.* ¶ 37). On one occasion, guards woke him up in the middle of the night, pulled him out of bed, and shackled him. (*Id.* ¶ 38). The guards put him on a bus and took him to the airport. (*Id.*). Petitioner then overheard an ICE agent say that "he couldn't leave the country." (*Id.*). The guards then took

Petitioner back to Delaney.  (*Id.*).

On October 14, 2025, Petitioner submitted, through counsel, a habeas petition pursuant to § 2241.  (*Id.*).  Petitioner's counsel filed the Motion for TRO and Amended Petition on October 15, 2025.[1]  (D.E. No. 2).  In the Amended Petition, Petitioner alleges three claims for relief: (i) violation of his substantive due process rights under the Fifth Amendment to the United States Constitution (Count One) (Am. Pet. at 18–19); (ii) violation of his procedural due process rights under the Fifth Amendment (Count Two) (*id.* at 19); and (iii) violation of his Fifth Amendment right to substantive due process of law in connection with the egregious and horrendous conditions of confinement endured by Petitioner at Delaney (Count Three) (*id.* at 20).

In the Amended Petition, Petitioner requests a writ of habeas corpus ordering his immediate release from custody, or, in the alternative, a habeas writ ordering an immediate bond hearing to ensure Petitioner's detention bears a reasonable relation to the government's interests.  (*Id.* at 20–21).

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2241, habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989) (per curiam).

Pursuant to Rule 4, this Court is required to preliminarily review a petitioner's habeas petition and determine whether it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."  Under this rule, a district court is

---

[1]    Petitioner attaches several exhibits to his Amended Petition: (i) a certification signed by Petitioner (D.E. No. 2 at 22–27); (ii) the I-918 and I-765 materials (*id.* at 28–51); (iii) the Bona Fide Determination Notice (*id.* at 52–53); (iv) his employment authorization (*id.* at 54–57); (v) a chart with statistics concerning I-918 petitions (*id.* at 58–59); (v) a February 13, 2019 report by the DHS Office of Inspector General ("OIG") regarding conditions at Delaney (*id.* at 60–82); and (vi) a June 14, 2025 news article about the escape of four detainees from Delaney (*id.* at 83–94).

"authorized to dismiss summarily any habeas petition that appears legally insufficient on its face." *McFarland v. Scott*, 512 U.S. 849, 856 (1994).

Federal Rule of Civil Procedure 65 governs TROs and preliminary injunctions. "If there is a possibility that irreparable injury will occur before the hearing on a preliminary injunction required by Rule 65(a) can be held, a temporary restraining order may be available under Rule 65(b)." *Int'l Foodsource, LLC v. Grower Direct Nut Co.*, No. 16-3140, 2016 WL 4150748, at *6 (D.N.J. Aug. 3, 2016). Such "[i]njunctive relief is an extraordinary remedy and should be granted only in limited circumstances." *See Westchester Fire Ins. Co. v. Glob. Real Constr., LLC*, No. 09-0207, 2009 WL 137414, at *1 (D.N.J. Jan. 20, 2009) (quoting *Kos Pharm. Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)). "The standard used to evaluate whether the issuance of a temporary restraining order is warranted is the same as that used to evaluate whether the issuance of a preliminary injunction is appropriate." *Int'l Foodsource, LLC*, 2016 WL 4150748, at *6.

A court may grant temporary restraints only if a party shows: "(1) that it will likely succeed on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Spectrum Produce Distrib., Inc. v. Fresh Mktg., Inc.*, No. 11-6368, 2011 WL 13063669, at *2 (D.N.J. Nov. 1, 2011). That test is conjunctive, such that "[a] plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit–Mar Enters. Inc.*, 176 F.3d 151, 153 (3d Cir. 1999); *see also P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC.*, 428 F.3d 504, 508 (3d Cir. 2005) ("The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate."). "As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always

will be the case that the public interest will favor the plaintiff.  Nonetheless, district courts should award preliminary injunctive relief only upon weighing all four factors." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994).

The Court further notes that the primary purpose of a preliminary injunction is the maintenance of the status quo until a decision on the merits of a case is rendered.  *See Acierno v. New Castle Cnty.*, 40 F.3d 645, 647 (3d Cir. 1994).  Where, as here, the movant seeks to alter the status quo, that party must meet a heavy burden.  *See Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980); *see also Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008).

## III.    DISCUSSION

The Court has screened the Amended Petition for dismissal pursuant to Rule 4, and it has determined that dismissal without an answer and production of the record is not warranted.

As to his Motion for TRO, Petitioner has failed to meet the heavy burden required to alter the status quo.  He asserts that he is likely to succeed on the merits because he has raised substantial constitutional and statutory claims demonstrating that his continued detention violates the Due Process Clause of the Fifth Amendment.  (Mot. for TRO at 2).  However, given the current record, Petitioner has not established a likelihood of success on the merits of his underlying claims for habeas relief.

Initially, Petitioner argues that he is entitled to a TRO or a preliminary injunction given "his Bona Fide U-Visa Determination and pending final approval for a U-Visa," and the alleged fact of "his inevitable prolonged detention based on USCIS's wildly backlogged processing times for final U-Visa decisions."  (*Id.* at 1–2).  This visa is designed to protect crime victims who have suffered substantial mental or physical abuse and are helpful in the investigation or prosecution of

criminal activity. (Am. Pet. ¶ 42 (citing 8 U.S.C. § 1101(a)(15)(U)). According to Petitioner, a grant of deferred action on a U-Visa petition provides protection from removal pending the final disposition of the petition. (*Id.* ¶ 42). However, because only a limited number of U-Visas can be issued each year, there is a substantial backlog for visas, which results in individuals with bona fide determinations waiting several years for final U-Visa approval. (*Id.* ¶¶ 42–44). Petitioner contends that, because he cannot be removed, should he remain in immigration detention, his confinement will inevitably result in "unreasonably prolonged, post-removal confinement well beyond the six month presumption set forth by the United States Supreme Court" in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Am. Pet. ¶ 46).

To date, Petitioner has been detained for less than two months. On the present record, the Court lacks basic information regarding the purported grounds for his detention, the status of any removal proceedings, or the totality of the circumstances regarding his U-Visa petition (or any other potentially relevant immigration-related proceedings).[2] Given the current circumstances, Petitioner has not established a likelihood of success on the merits with respect to his "U-Visa" theory.

In his Motion for TRO, Petitioner further argues he is entitled to a TRO or a preliminary injunction on account of "the unconstitutional punitive conditions [he] endured . . . while in ICE custody." (Mot. for TRO at 2). In his Amended Petition, Petitioner describes at some length the alleged unsanitary and punitive conditions of confinement at Delaney, referring to a OIG inspection report, a newspaper article discussing a recent escape by four Delaney detainees, and Petitioner's own experiences at the facility (including threats of solitary confinement and an

---

[2]    A search of the Executive Office for Immigration Review ("EOIR") Automated Case Information Database indicates that an immigration judge issued a decision on September 10, 2025, in a proceeding involving Petitioner. EOIR Automated Case Information Database, available at https://acis.eoir.justice.gov/en/caseInformation (last visited Oct. 17, 2025)

incident in which he was taken without explanation in the middle of the night in shackles for "unknown transportation"). (Am. Pet. ¶¶ 28–39, 59–78 (emphasis omitted)). However, "[a] conditions-of-confinement claim is cognizable in § 2241 proceedings '*only in extreme cases*.'" *Folk v. Warden Schuylkill FCI*, No. 23-1935, 2023 WL 5426740, at *1 (3d Cir. Aug. 23, 2023) (alteration in original) (quoting *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 324 (3d Cir. 2020)). For purposes of Petitioner's request for a TRO or preliminary injunctive relief, and at this early stage of the proceeding, Petitioner has not shown that this is an "extreme" case in which the alleged conditions of confinement justify an order changing the status quo.[3]

Accordingly, because Petitioner has failed to meet his burden to show a likelihood of success on the merits, his Motion for TRO is denied without prejudice. However, the Court will order Respondents to answer the Amended Petition on an expedited basis.

### IV.    CONCLUSION

For the reasons stated above, the Court **DENIES** the Motion for TRO *without prejudice*. The Court directs Respondents to file a full and complete answer to the Amended Petition in accordance with the accompanying order. Petition may then file a reply in accordance with that order.

An appropriate order follows.

s/ Esther Salas
**Esther Salas, U.S.D.J.**
Date:  October 17, 2025

---

[3]    In his Amended Petition, Petitioner also claims that, regardless of his detention, he is entitled to immediate release based on an application of the *Matthews* factors used to determine whether constitutionally sufficient procedures have been made available and because he is neither a flight risk nor a danger to the community. (Am. Pet. ¶¶ 48–58 (citing *Matthews v. Eldridge*, 424 U.S. 319 (1976))). But Petitioner again has failed to show that he is likely to succeed on this claim. For instance, Petitioner has not provided any documentation or other information regarding the statutory grounds for his current detention. (*Id.* ¶ 48 (noting that courts must balance the government's interest under *Matthews*)). Furthermore, although Petitioner suggests that it was improper to detain him because he had a bona fide determination granting deferred action (*id.* ¶ 52), he does not cite any legal authority specifically prohibiting the detention of individuals who have been given deferred action on a U-Visa application.